Michael R. DiChiara (MD-2180)
KRAKOWER DICHIARA LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: (201) 746-0303
Fax: (347) 765-1600

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
TED AMLEY,

                       Plaintiff,

              -against-

SUMITOMO MITSUI BANKING
CORPORATION,

                       Defendant.

---------------------------------------------------------x

<u>COMPLAINT</u>

_____-cv-_____ (___)

DEMAND FOR JURY TRIAL

      Plaintiff, TED AMLEY, by and through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, brings this Complaint against Defendant SUMITOMO MITSUI BANKING CORPORATION ("SMBC") and alleges as follows:

**PRELIMINARY STATEMENT**

      1.     Plaintiff brings this lawsuit seeking recovery against Defendant for Defendant's violations of the Family and Medical Leave Act of 1993, as amended ("FMLA"); New York State Human Rights Law, Executive Law § 296, *et seq*. ("NYSHRL"); and New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq*. ("NYCHRL"), including the anti-retaliation provisions of those statutes.

**JURISDICTION AND VENUE**

2. This Court has original federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 because this case is brought under the FMLA.

3. This Court has supplemental jurisdiction over the New York state law claims under 28 U.S.C. § 1367(a), as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Defendant conducts business in the District and the acts and/or omissions giving rise to the claims herein alleges took place in this District.

5. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and 28 U.S.C. § 2202.

**THE PARTIES**

**Defendant**

6. All actions and omissions described in this Complaint were made by Defendant directly and/or through Defendant's supervisory employees and agents.

7. Defendant's actions and omissions described in this complaint and causing injury to Plaintiff were done knowingly and willfully.

**Defendant Sumitomo Mitsui Banking Corporation ("SMBC")**

8. Defendant SMBC is a banking organization organized under the laws of Japan with its principal place of business in Tokyo, Japan, and operates through a branch

or branches and offices in the State of New York and in the Southern District of New York.

9. Defendant SMBC maintains executive offices at 277 Park Avenue, New York, New York 10172, in New York County.

10. At all times relevant to this Complaint, Defendant SMBC was and is an employer within the meaning of the FMLA, 29 U.S.C.A. § 2611(4)(A).

11. At all times relevant to this Complaint, Defendant SMBC was and is an employer as that term is defined by NYSHRL § 292(5).

12. At all times relevant to this Complaint, Defendant SMBC was and is an employer as that term is defined by NYCHRL § 8-102(5).

**Plaintiff Ted Amley**

13. Plaintiff is an adult individual who is a resident of New York, New York.

14. At all times relevant to this Complaint, Plaintiff had a serious medical condition as defined under Section 2611 of the FMLA.

15. At all times relevant to this Complaint, Plaintiff suffered a disability as that term is defined by the NYSHRL § 292(21).

16. At all times relevant to this Complaint, Plaintiff suffered a disability as that term is defined by the NYCHRL § 8-102(16)

17. At all times relevant to this Complaint, Plaintiff, upon the provision of reasonable accommodations, was fully able to perform the activities involved in his position with Defendant.

**FACTS**

18. Plaintiff was employed by Defendant from on or about August 2011 until November 2017.

19. Plaintiff was employed by Defendant as a Vice President and Assistant General Counsel.

20. Through his employment with Defendant, Plaintiff met or exceeded all reasonable business expectations of a Vice President and Assistant General Counsel within Defendant's workforce.

21. Through his employment with Defendant, consistently received favorable performance reviews until such time as Defendant began to unlawfully discriminate against Plaintiff.

22. In fact, for fiscal years 2013, 2014, 2015 and 2016, Plaintiff was awarded significant performance-based bonuses that increased over time.

**Violation of FMLA Rights, Disability Discrimination, and Retaliation**

23. Defendant discriminated against Plaintiff due to his serious medical condition disability in violation of the FMLA.

24. Defendant discriminated against Plaintiff due to his disability in violation of the NYSHRL.

25. Defendant discriminated against Plaintiff due to his disability in violation of the NYCHRL.

26. In or about August 2016, Plaintiff was diagnosed with plantar fasciitis.

27. Plaintiff's medical condition caused him extreme pain.

28. Beginning in September 2016, Plaintiff's medical condition became so severe that it significantly impacted his ability to walk.

29. In the office, Plaintiff hobbled about and walked with a distinct limp.

30. Outside of the office, he walked with a crutch and, when the pain was particularly acute, he used a wheelchair.

31. Also beginning in or about September 2016, Plaintiff began requiring regular medical leave for doctor's appointments and for medical treatments.

32. Shortly after Plaintiff began requiring leave for his doctor's appointments and medical treatments, Hiro Oshima and William Haney, Plaintiff's supervisors, began subjecting Plaintiff to retaliation for requiring leave.

33. Specifically, on two separate occasions in January 2017, Oshima and Haney disciplined Plaintiff and verbally reprimanded him for his attendance.

34. Plaintiff explained to Oshima and Haney that many of his absences were due to his serious medical condition.

35. Plaintiff further explained to Oshima and Haney that two to three times per week, Plaintiff had to leave work early -- at 4:00 or 4:30pm -- to obtain treatments for his plantar fasciitis.

36. Plaintiff's request to leave work early two to three time per week was a request for a reasonable accommodation.

37. At all times relevant to this Complaint, such accommodation of allowing Plaintiff to occasionally leave work early could have been made and would not have caused undue hardship in the conduct of the Defendant's business.

38. Plaintiff additionally explained that his medically-necessary treatments included doctor-administered cortisone injections, electrode-based stimulation, ultrasound treatments and massages.

39. Plaintiff informed Oshima and Haney that he scheduled his medical appointments in a way that would result in the least impact on his work schedule as possible, and also that he often worked additional hours from home after his medical appointments to complete any time-sensitive work projects.

40. Despite being aware that Plaintiff suffered from a serious medical condition and requiring intermittent leave, Defendant never offered Plaintiff protected medical leave as required by the FMLA.

41. Rather, Oshima and Haney proceeded to admonish Plaintiff and required that he restrict his medical treatments to two or fewer times per week despite being fully aware that Plaintiff regularly required three treatments in a week.

42. Oshima and Haney also insisted that Plaintiff restrict the timing of his medical treatments to certain times during the workday itself, thereby resulting in a diminution of the quality of his medical care.

43. Plaintiff explained to Oshima and Haney that, from a medical treatment perspective, it was most advantageous for his medical appointments to be scheduled for late in the afternoon because the doctor whose care he was under was not present in that office earlier in the day and because he received acupuncture treatments from a different doctor for the same medical condition during most evenings.

44. Thus, late afternoon appointments -- two and three times per week -- were critical to his medical treatment.

45. And, as already noted, in the event any work-related obligations arose during such appointments, Plaintiff responded to them remotely after his treatment for that day ended.

46. Oshima and Haney compelled Plaintiff to make medical appointments only in the late morning or early afternoon of a workday when he was permitted to receive medical treatment.

47. This meant that he would lose the ability to receive treatment directly from – and be observed in person by – his doctor.

48. The rationale of Oshima and Haney for its directives relating to the timing of Plaintiff's medical treatments was as follows: they told Plaintiff that if he left in the late afternoon and did not return to the workplace that day, other employees would become "jealous" and think he was being improperly "favored."

49. Oshima and Haney refused to recognize that his time off for medical treatment was not favoritism, it was a statutory right.

50. Because Plaintiff could not afford to lose his job, he agreed to comply with Defendant's restrictions on his medical treatment, despite such restrictions being adverse to the medical care he was receiving.

51. Subsequently, a significant snowstorm hit New York City in February 2017.

52. From the start of Plaintiff's employment in 2011, Defendants permitted employees to work remotely if they believed commuting would be unsafe or impracticable due to adverse weather conditions.

53. Plaintiff's mobility, which was strained in even the most ideal of weather conditions, was severely compromised by the significant build-up of snow and ice caused by the storm in February 2017.

54. Accordingly, Plaintiff followed company policies and procedures in notifying his supervisors and colleagues that he believed it was unsafe for him to commute in the blizzard, so he needed to work from home that day.

55. Plaintiff's request to work from home due to the snowstorm was a request for a reasonable accommodation.

56. At all times relevant to this Complaint, such accommodation to allow Plaintiff to work for home during the one snow day could have been made and would not have caused undue hardship in the conduct of the Defendant's business

57. Defendant, however, refused Plaintiff's request for reasonable accommodations and ordered Plaintiff to come in to work regardless of his disability.

58. Because Plaintiff was physically unable to report to work due to his disability, he worked from home that day and completed his assigned projects.

59. Plaintiff provided Defendant with a doctor's note confirming that Plaintiff was unable to walk in snowy and icy ground conditions due to his medical condition.

60. Despite the doctor's note prohibiting Plaintiff from walking in snow and icy ground conditions and despite the fact that Plaintiff worked a full day of work from home, Oshima told Plaintiff he was reclassifying his work-from-home day as a vacation or personal day.

61. Following the snowstorm, Defendant increased its retaliation against Plaintiff for requiring medical leave and accommodations for his disability.

62. Notably, in March 2017, Plaintiff was issued a negative performance review that penalized Plaintiff for his medical absences and was replete with baseless negative remarks.

63. As further discrimination and retaliation, in June 2017, Defendant informed Plaintiff that he would receive a significantly reduced bonus for the fiscal year that ended on March 31, 2017.

64. In mid-September, Defendant issued to Plaintiff a baseless written warning as further retaliation and discrimination.

65. Two weeks later, Defendant summarily terminated Plaintiff, with such termination to be effective at the end of November 2017.

66. Tellingly, during the warning and termination meetings, Oshima stated that Plaintiff's workplace absences, which he and SMBC. were fully aware were caused by the need for medical treatment, were factors in Defendant's disciplinary decisions.

67. Defendant terminated Plaintiff because of his disability.

68. Defendant terminated Plaintiff because he required medical leave due to his serious medical condition.

69. Defendant terminated Plaintiff in retaliation for taking medical leave due to his serious medical condition.

70. Defendant terminated Plaintiff in retaliation for requiring reasonable accommodations for his disability.

**FIRST CLAIM FOR RELIEF**
**(Violations of the FMLA, 29 U.S.C. § 2601 *et seq*. – Interference with FMLA)**

71. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

72. At all times relevant to this Complaint, Defendant SMBC was and is an employer within the meaning of the FMLA, 29 U.S.C.A. § 2611(4)(A).

73. At all times relevant to this Complaint, Plaintiff had a serious medical condition as defined under § 2611 of the FMLA.

74. At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined under § 2611 of the FMLA.

75. To the extent that Defendant made such procedures, guidelines and protocols for taking medical leave available to Plaintiff, Plaintiff complied promptly and fully with all such procedures, guidelines and protocols.

76. On or about January 2017, Plaintiff informed Defendant of a serious medical condition and of his request for medical leave, thereby engaging in a protected activity under the FMLA.

77. Allowing Plaintiff to take intermittent medical leave for his serious medical condition would not have imposed any undue hardship on Defendant.

78. Defendant did not offer Plaintiff protected medical leave.

79. Defendant rejected Plaintiff's request for medical leave three times per week and required Plaintiff to limit his leave to two times per week.

80. Defendant rejected Plaintiff's request to take medical leave during a period of the workday when it would have been most advantageous, from a medical perspective, for him to receive it.

81. Defendant interfered with Plaintiff's rights to take protected medical leave.

82. Defendant denied Plaintiff his right to take protected medical leave.

83. Defendant restrained Plaintiff's ability to take protected medical leave.

84. By virtue of the foregoing, pursuant to 29 U.S.C. §§ 2615 and 2617, Plaintiff is entitled to recover twice his lost wages with interest thereon, actual damages, reinstatement, attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**(Violations of the FMLA, 29 U.S.C. § 2601 *et seq*. – Retaliation)**

85. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

86. At all times relevant to this Complaint, Defendant SMBC was and is an employer within the meaning of the FMLA, 29 U.S.C.A. § 2611(4)(A).

87. At all times relevant to this Complaint, Plaintiff had a serious medical condition as defined under § 2611 of the FMLA.

88. At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined under § 2611 of the FMLA.

89. To the extent that Defendant made such procedures, guidelines and protocols for taking medical leave available to Plaintiff, Plaintiff complied promptly and fully with all such procedures, guidelines and protocols.

90. On or about January 2017, Plaintiff informed Defendant of a serious medical condition and of his request for medical leave, thereby engaging in a protected activity under the FMLA.

91. Allowing Plaintiff to take intermittent medical leave for his serious medical condition would not have imposed any undue hardship on Defendant.

92. Defendant did not offer Plaintiff protected medical leave.

93. Defendant retaliated against Plaintiff for requesting medical leave pursuant to the FMLA for Plaintiff's serious medical condition by reducing Plaintiff's bonus, by subjecting Plaintiff to unwarranted discipline, and ultimately by terminating Plaintiff's employment.

94. Defendant disciplined Plaintiff and reduced his bonus as a direct and proximate result of Plaintiff requesting and taking FMLA leave and thereby took an adverse employment action against Plaintiff.

95. Defendant terminated Plaintiff's employment as a direct and proximate result of Plaintiff requesting and taking FMLA leave and thereby took an adverse employment action against Plaintiff.

96. There is a causal connection between the protected activity Plaintiff engaged in and the adverse employment actions Defendant took in response.

97. By virtue of the foregoing, pursuant to 29 U.S.C. §§ 2615 and 2617, Plaintiff is entitled to recover twice his lost wages with interest thereon, actual damages, reinstatement, attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**(Disability Discrimination in Violation of the NYSHRL)**

98. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

99. At all times relevant to this Complaint, Defendant SMBC was and is an employer as that term is defined by NYSHRL § 292(5).

100. At all times relevant to this Complaint, Plaintiff suffered a disability as that term is defined by the NYSHRL § 292(21).

101. Plaintiff belongs to the group protected by NYSHRL § 296 *et seq.*

102. At all times relevant to this Complaint, Plaintiff was and is capable of performing the essential functions of his job as a Vice President and Assistant General Counsel within Defendant's workforce.

103. On or about January 2017, Plaintiff requested the reasonable accommodation of intermittently leaving early for medical treatments.

104. Affording to Plaintiff the reasonable accommodation of intermittently leaving early for medical treatments would not have caused undue hardship in the conduct of the Defendant's business.

105. On or about February 2017, Plaintiff requested the reasonable accommodation of being able to work from home one day during a snowstorm.

106. Affording Plaintiff the reasonable accommodation of being able to work from home one day during a snowstorm would not have caused undue hardship in the conduct of the Defendant's business.

107. When Plaintiff requested the reasonable accommodations of intermittently leaving early and working from home during a snowstorm, Defendant retaliated against Plaintiff by issuing a negative performance review, docking Plaintiff a vacation/personal day, and reducing his bonus.

108. When Plaintiff requested the reasonable accommodations of intermittently leaving early and working from home during a snowstorm, Defendant ultimately retaliated against Plaintiff by terminating Plaintiff's employment.

109. Plaintiff has been discriminated against by Defendant on the basis of his disability in violation of NYSHRL § 296 *et seq*.

110. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental anguish and suffering, physical consequences of the severe emotional distress and damage to his professional reputation.

## FOURTH CLAIM FOR RELIEF
**(Disability Discrimination in Violation of the NYCHRL)**

111. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

112. At all times relevant to this Complaint, Defendant SMBC was and is an employer as that term is defined by NYCHRL § 8-102(5).

113. At all times relevant to this Complaint, Plaintiff suffered a disability as that term is defined by the NYCHRL § 8-102(16).

114. Plaintiff belongs to the group protected by NYCHRL.

115. Plaintiff belongs to the group protected by NYCHRL.

116. At all times relevant to this Complaint Plaintiff was and is capable of performing the essential functions of his job as a Vice President and Assistant General Counsel within Defendant's workforce.

117. On or about January 2017, Plaintiff requested the reasonable accommodation of intermittently leaving early for medical treatments.

118. Affording to Plaintiff the reasonable accommodation of intermittently leaving early for medical treatments would not have caused undue hardship in the conduct of the Defendant's business.

119. On or about February 2017, Plaintiff requested the reasonable accommodation of being able to work from home one day during a snowstorm.

120. Affording Plaintiff the reasonable accommodation of being able to work from home one day during a snowstorm would not have caused undue hardship in the conduct of the Defendant's business.

121. When Plaintiff requested the reasonable accommodations of intermittently leaving early and working from home during a snowstorm, Defendant retaliated against Plaintiff by issuing a negative performance review, docking Plaintiff a vacation/personal day, and reducing his bonus.

122. When Plaintiff requested the reasonable accommodations of intermittently leaving early and working from home during a snowstorm, Defendant ultimately retaliated against Plaintiff by terminating Plaintiff's employment.

123. Plaintiff has been discriminated against by Defendant on the basis of his disability in violation of NYCHRL § 8-107(15).

124. As a proximate result of Defendant's discrimination, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental anguish and suffering, physical consequences of the severe emotional distress and damage to his professional reputation.

**FIFTH CLAIM FOR RELIEF**
**(Retaliation in Violation of the NYSHRL)**

125. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

126. The NYSHRL, specifically NYSHRL § 296(e), makes it unlawful for an employer to discriminate against an employee who has opposed an unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

127. During his employment with Defendant, Plaintiff was subject to discrimination based on his disability.

128. Plaintiff complained about said discrimination to Defendant.

129. Defendant immediately retaliated against Plaintiff for making complaints about discrimination by subjecting Plaintiff to unwarranted discipline.

130. Defendant retaliated against Plaintiff for making complaints about discrimination by docking Plaintiff a vacation/personal day.

131. Defendant retaliated against Plaintiff for making complaints about discrimination by subjecting Plaintiff to adverse employment actions, including summarily terminating Plaintiff's employment.

132. As Defendant's retaliatory actions, including but not limited to the dismissal of Plaintiff, were willful, malicious, and/or with conscious disregard of Plaintiff's statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

133. Plaintiff also requests damages for such additional relief as justice may require, together with costs, attorney fees, pre-judgment interest, post-judgment interest, and other appropriate relief as the Court may grant in this action.

## SIXTH CLAIM FOR RELIEF
**(Retaliation in Violation OF NYCHRL, N.Y.C. ADMIN. CODE § 8-101, *et seq*.)**

134. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

135. NYCHRL, specifically N.Y.C. Admin. Code § 8-107(7), makes it unlawful for an employer to discriminate against an employee who has opposed an

unlawful employment practice or has assisted or participated in another employee's claim of discrimination.

136. Plaintiff engaged in the protected activities of complaining about unlawful harassment based on his disability.

137. Defendant immediately retaliated against Plaintiff for making complaints about discrimination by subjecting Plaintiff to unwarranted discipline.

138. Defendant immediately retaliated against Plaintiff for making complaints about discrimination by docking Plaintiff a vacation day.

139. Defendant subjected Plaintiff to adverse employment actions, including terminating Plaintiff's employment.

140. A causal link exists between the protected activity and the adverse employment actions as Defendant knew of Plaintiff's activities and complaints, and Defendant's retaliatory acts were a direct result of such activities and complaints.

141. Defendant retaliated against Plaintiff for his complaints in violation of the anti-retaliation provision of NYCHRL.

142. As a result of such conduct by the Defendant, Plaintiff has suffered damages and is entitled and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of the Defendant's illegal conduct.

143. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's rights protected by NYCHRL, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief on all Claims for Relief:

    A.    Damages in an amount to be determined at trial

    B.    All compensatory and economic damages;

    C.    All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show himself justly entitled;

    D.    All punitive and statutory damages authorized by law;

    E.    Pre-judgment and post-judgment interest; and

    F.    Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right.

Dated: April 26, 2019

Respectfully submitted,

KRAKOWER DICHIARA LLC:

s/ Michael R. DiChiara
Michael R. DiChiara (MD-2180)

77 Market Street, Suite 2
Park Ridge, NJ 07656
T: (201) 746-6333
F: (347) 765-1600

100 Church Street, 8th Floor
New York, NY 10007

*Attorneys for Plaintiff*